## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

|  |  |
|---|---|
| AJARI ENIYI,<br><br>                    Plaintiff,<br><br>        v.<br><br>ACCURATE BACKGROUND, LLC,<br><br>                    Defendant. | Civil Action No.  4:24-cv-12-DMB-JMV<br><br>Honorable Judge**:** |

## COMPLAINT

Ajari Eniyi ("Plaintiff" or "Mr. Eniyi") by and through his counsel brings the following Complaint against Accurate Background, LLC ("Defendant" or "ABL") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a convicted felon.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

1

2.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.     Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of felony DUI. Defendant's reporting is grossly inaccurate and untrue.

4.     Plaintiff has never been convicted of a felony in his life.

5.     Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate felony conviction.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Bernalillo County, New Mexico regarding the DUI offense prior to publishing Plaintiff's report to his prospective employer.

7.     Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff has never been convicted of felony DUI.

8.     Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers.

Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.      Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10.      Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11.      As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.      As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information

Plaintiff disputed – the **felony** conviction – was inaccurate and should be corrected in the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

## **PARTIES**

13.     Ajari Eniyi ("Plaintiff" or "Mr. Eniyi") is a natural person residing in Clarksdale, Mississippi, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.     Defendant Accurate Background, LLC ("Defendant" or "ABL") is a California limited liability company doing business throughout the United States, including the State of Mississippi and in this District, and has a principal place of business located at 200 Spectrum Center Drive, Suite 1100, Irvine, CA 92618. ABL can be served through its registered agent, C T Corporation System, at 330 North Brand Boulevard, Suite 700, Glendale, CA 91203.

15.     Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer

4

reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

21.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the background check industry.

30.    As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

31.    The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

32.    Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data.  The

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

8

37.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor as a felony.

39.     As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Whole Foods

40.     In September of 2023, Plaintiff was let go from his previous retail position after his employer was purchased by a larger company who replaced the now-former staff with its own staff.

41.     For this reason, Plaintiff applied for full-time employment with Whole Foods, located in Memphis, Tennessee.

42.     Upon applying to Whole Foods, Plaintiff successfully completed the interview process and was offered a position at Whole Food conditioned upon Plaintiff passing a background check ("employment report.")

### Defendant Published an Inaccurate Background Check Report to Whole Foods

43.     Whole Foods contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

44.     On or about October 14, 2023, Whole Foods ordered a criminal background check on Plaintiff from Defendant.

45.     On or about October 19, 2023, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Whole Foods.

46.     Within that employment report, Defendant published inaccurate information about Plaintiff.

47.     Specifically, Defendant's employment report about Plaintiff included a grossly inaccurate and stigmatizing felony DUI conviction from Bernalillo County, New Mexico, which appeared in the employment report as follows:



**CASE FILE: 1**

| CASE NUMBER: | T-4-DW-2019001653 | FILING DATE: | 07/16/2019 |
|---|---|---|---|

| CHARGES: | NUMBER | DESCRIPTION | LEVEL | DISPOSITION |
|---|---|---|---|---|
| | #1 | DRIVING WHILE UNDER THE INFLUENCE OF INTOXICATING LIQUOR IMPAIRED FIFTH OFFENSE | FELONY | GUILTY |
| | Charge Disposition Date: | 02/24/2022 | | |

| CHARGE SENTENCING: | | |
|---|---|---|
| OTHER: | UNSPECIFIED PROBATION | |

48.     The felony DUI conviction reported by Defendant about Plaintiff is inaccurate.

49.     Plaintiff has never been convicted of a felony in his life.

50.     A cursory review of the widely available underlying public court records confirms that Plaintiff never pled guilty to or was convicted of felony DUI. Rather, the public record confirms that Plaintiff was only ever convicted of "Driving While Intoxicated First Offense § 66-8-102 (as amended)".

51.     A reference to the cited statute makes clear it's not until a fourth conviction of DUI will an individual be guilty of a felony.

52.     The sole reason the inaccurate felony conviction was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

53.     Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of felony DUI and would not have reported the same.

54.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

11

## Whole Foods Denies Plaintiff's Job Application

55.     On or about October 20, 2023, Plaintiff was notified by an pre-adverse action notice that his employment application may be denied as a direct result of the felony conviction reported by Defendant.

56.     Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the felony DUI conviction contained within the subject employment report.

57.     Plaintiff attempted to contact Whole Foods to tell them that he has never been convicted of a felony in his life.

58.     The only person Plaintiff was able to contact was the person slated to be his direct supervisor who informed Plaintiff there was nothing they could do until ABL updated the report.

59.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he was a convicted felon, both in relation to the Whole Foods position, but also the impact of the same on his future.

60.     Specifically, Defendant reported a felony DUI conviction that is clearly labeled in the underlying court records as a *first time offense*. The underlying court records were available to Defendant prior to publishing Plaintiff's employment report to Whole Foods, but Defendant failed to obtain or perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

61.     Desperate to secure employment with Whole Foods and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant.  Plaintiff disputed via telephone with Defendant.

62.     Plaintiff identified himself and provided information to Defendant to support his dispute.

63.     Plaintiff specifically disputed the inaccurate reporting of a **felony** conviction that should have been reported as a misdemeanor.

64.     Plaintiff specifically asked Defendant to investigate and correct its reporting in any employment report about Plaintiff.

**Defendant Failed to Conduct a Reasonable Reinvestigation and Correct the Employment Report**

65.     Plaintiff never received any response from ABL regarding his dispute of its patently and grossly inaccurate information.

66.     Upon information and belief, Defendant failed to issue a corrected employment report to Whole Foods.

67.     Upon information and belief, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's October 2023 dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

68.     Upon information and belief, because Defendant failed to issue a corrected employment report, on November 14, 2023, Whole Foods withdrew its job offer.

69.     But for Defendant's inaccurate employment report, Plaintiff's job offer would have proceeded to a hiring action, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

70.     Defendant's false report cost Plaintiff a promising, well-paying job with Whole Foods.

71.     Plaintiff was really excited about the prospect of working for Whole Foods.

72.     Plaintiff identified with Whole Foods's ethic of organic and sustainability and was looking forward to having an employer who shared his values.

73.     Moreover, the position with Whole Foods was full-time and Plaintiff was set to earn $16.00 per hour with a competitive benefits package.

74.     Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to seek employment, Plaintiff was unemployed for approximately three months, from October 2023 to January 2024.

75.     In that time, Plaintiff suffered from worry, anxiety and depression.

76.     Plaintiff had bouts of insomnia every night because he was too irritable and anxious to sleep. This was especially acute during the holiday season.

77.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

78.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

79.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

80.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

81.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

82.     At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

83.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the employment report it sold about Plaintiff as well as the information it published within the same.

84.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

85.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory

damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

86.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**

87.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

88.     The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id.*

89.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

90.     On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendant and requested that Defendant correct the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to her, namely, stating that he is a convicted felon.

91.     Upon information and belief, Defendant failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the employment report and refused to correct the employment report at issue.

92.     Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to correct the disputed inaccurate information from the subject employment report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a public source it has reason to know is unreliable.

93.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological

damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

94.     Defendant willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.   Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

95.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Determining that Defendant negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: February 2, 2024        By: /s/ Brian H. Herrington
Brian Kelly Herrington
CHABRA GIBBS & HERRINGTON, PLLC
120 North Congress Street, Suite 200
Jackson, MS 39201
T: (601) 948-8005
F: (601) 948-8010
E: bherrington@nationalclasslawyers.com

*Attorneys for Plaintiff*
*Ajari Eniyi*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

By: */s/ Brittaney Thornton*